IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH DAVIS, | ) |
| Claimant, | ) No. 14 CV 8513 |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Sarah Davis ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for disability insurance under Title II of the Social Security Act. In accordance with 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 12.] Pursuant to Federal Rule of Civil Procedure 56, the parties filed cross-motions for summary judgment. [ECF No. 16; ECF No. 21.] For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 16] is denied and the Commissioner's Cross-Motion for Summary Judgment [ECF No. 21] is granted. The decision of the Commissioner is affirmed.

## I. PROCEDURAL HISTORY

Claimant filed an application for disability insurance benefits on February 1, 2012, alleging a disability onset date of January 26, 2012. (R. 160.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 119.) Claimant, represented by counsel, appeared and testified before an Administrative Law Judge (the "ALJ")

on January 29, 2013. (R. 52, 56–85, 95.) Claimant's husband Jesse Davis and a Vocational Expert (the "VE") also testified. (R. 86–102.)

On March 4, 2013, the ALJ issued a written decision denying Claimant's applications for benefits based on a finding that she was not disabled under the Social Security Act from her alleged onset date through the date of her hearing. (R. 35–46.) The opinion followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset date of January 26, 2012. (R. 37.) At step two, the ALJ found that Claimant had the severe impairments of degenerative disc disease of the cervical spine, history of sarcoidosis, sleep apnea, chronic obstructive pulmonary disorder, hypertension, diabetes mellitus, and left anterior artery bulging. (R. 38.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926) (the "Listings.") (R. 39.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a restricted range of light work, in that she could lift and/or carry twenty pounds occasionally and ten pounds frequently. She could sit or stand/walk for up to six hours in an eight hour workday, but could only sit for up to thirty minutes continuously and stand and/or walk for up to one hour continuously. She had the following postural and environmental restrictions: she could never climb ladders, ropes, or scaffolding; she could only occasionally climb ramps and stairs, stoop, or crouch; she needed to avoid concentrated exposure to extreme cold, heat, wetness, humidity, and pulmonary irritants, and could never work with hazardous machinery or in high exposed places. (R. 39.) Based on this RFC and the testimony of the VE,

the ALJ determined at step four that Claimant was capable of performing her past relevant work as a customer service representative. (R. 45.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 46.) The Social Security Appeals Council subsequently denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 7.) *See Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALT applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms v. Astrue,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. DISCUSSION

Claimant argues, first, that the ALJ erred in not listing her depression as a severe impairment. Second, she contends that the ALJ made several errors in finding that her impairments do not, individually or in combination, meet or medically equal one of the Listings. Third, she argues that the ALJ's assessment of her RFC is not supported by substantial evidence. Fourth, Claimant finds error in the ALJ's evaluation of her credibility.

As an initial matter, Claimant's brief is notable for a recurrent failure on the part of counsel to support Claimant's arguments with evidence from the record. The defect may arise from counsel's mistaken understanding of the nature of the proceedings before this Court. In Claimant's Reply brief, counsel argues that "the kind of 'proof' required in Social Security disability appeals is different from that which is required in bench or jury trials." In support of this position, counsel cites *Sims v. Apfel,* in which the Supreme Court noted that "Social Security proceedings are inquisitorial rather than adversarial." 530 U.S. 103, 110–11 (2000).

4

Counsel is mistaken in his belief that he need not supply the Court with evidence to back his assertions. While it is true that, at the hearing level, a Social Security proceeding is not adversarial, this case has moved beyond the hearing stage. The current proceeding is a civil suit in federal court, and it is adversarial in nature. *See Hearing before Committee on Ways and Means, Subcommittee on Social Security*, Statement of Michael J. Astrue, Commissioner, Social Security Administration, June 28, 2012 ("In contrast to the ALJ hearing, Federal courts employ an adversarial process.") Here, both parties are represented by counsel, and the duty to develop arguments is now theirs. *Compare Sims,* 530 U.S. 103 at 111 (noting that, at the administrative level, the "Commissioner has no representative before the ALJ to oppose the claim for benefits.") Counsel submitted an opening brief marked by scattershot, undeveloped and conclusory arguments, most bearing little reference to the facts of the case. Nevertheless, the Court has conducted a critical review of the evidence and, to the extent that counsel's briefing allows, has evaluated each of Claimant's arguments on the merits, as detailed below.[1]

### A. The ALJ Did Not Err in Her Severe Impairments Analysis.

Claimant contends that the ALJ erred at step two in not assessing her depression as a severe impairment. An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do work activities." 20 C.F.R. § 404.1520(c). In addition, to pass the threshold of step two, the impairment must have lasted or be expected to last for a continuous period of at least twelve months, or must be expected to result in death. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii). When evaluating the severity of a mental impairment, an ALJ must employ a "special technique," assessing the degree of functional limitation caused by the mental

---

[1]      Claimant's briefs also appear to violate Local Rule 5.2(c), which requires that all filings have line spacing of at least 2.0 lines. The line spacing of Claimant's brief appears to be 1.5 lines. If the Court's impression is correct, Claimant's counsel is directed to remedy this oversight in all future briefs submitted to this Court.

5

impairment, as measured in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a; *Pepper v. Colvin,* 712 F.2d 351, 365–66 (7th Cir. 2013.)

At step two, the ALJ found that seven of Claimant's impairments were "severe," but that her depression was not. (R. 38.) In considering Claimant's depression, the ALJ first evaluated pertinent symptoms as she was required to do under the regulations, with a thorough description of her two treatment contacts for that condition, both in November 2012. (R. 38, citing R. 1232–38.) The ALJ then rated the degree of functional limitation caused by Claimant's depression in each of the four functional domains. Relying chiefly on Claimant's own descriptions of her abilities, the ALJ found that Claimant's depression caused her mild limitations in her activities of daily living, mild limitations in social functioning, and mild limitations in concentration, persistence, or pace; she also found that Claimant has had no episodes of decompensation. (R. 38–39.)

Claimant argues that the ALJ "has no such competence to 'find' that [Claimant] has mild limitations in [activities of daily living,] social functioning, and concentration[,] persistence or pace" because she is not a doctor. (ECF No. 16 at 6.) Again, this does not reflect the law. The regulations require ALJs to make those findings whenever assessing the severity of mental impairments, and to "incorporate into their decision the pertinent findings and conclusions based on the [special] technique." *Richards v. Astrue,* 370 Fed.Appx. 727, 730, 2010 WL 143893 at **3 (7th Cir. Apr. 13, 2010.) Here, the ALJ did exactly that: she considered all of the available evidence—consisting of notes from two medical appointments, and Claimant's oral and written testimony—and built a logical bridge from that evidence to her conclusion that Claimant's depression was not "severe."

The ALJ also concluded that Plaintiff's depression did not meet the twelve-month durational requirement of the statute, based on her observation that notes from Claimant's follow-up visit indicate that the depression was improving with treatment, and Claimant's own testimony that her medication was at least somewhat helpful. (R. 38; *see* R. 62, 1233.) Claimant argues that the ALJ is not qualified to determine from treatment notes how long her depression is projected to last. The trouble with Claimant's argument is that, at step two, she has the burden of proving that her conditions are severe, a burden that requires her to produce some evidence suggesting that her conditions significantly limit her work-related functioning *and* are expected to last more than twelve months. Claimant's brief points to no evidence to support either contention, and the Court has found none in the record. The ALJ's finding that Claimant's depression is not severe therefore will not be disturbed.

**B.     The ALJ's Listings Assessment Was Supported By Substantial Evidence**

Claimant offers three criticisms of the ALJ's determination, at step three, that her impairments did not meet or equal the severity of a listed impairment. She argues that the step-three analysis is faulty (1) because it is perfunctory, particularly with respect to Listing 1.04; (2) because it improperly relies on the opinions of state agency consultants; and (3) because it fails to undertake an equivalence analysis.

To assert that she is disabled at step three, a claimant "first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 Fed.Appx. 652, 655 (7th Cir. 2009) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006)). Here, the ALJ relied on the opinions of the State Agency consultants and concurred with their opinion that no Listing is met or equaled in Claimant's case. (R. 39.) With respect to Listing 1.04, Disorders of the Spine, the

7

ALJ wrote only that she had "considered" that Listing, a statement that Claimant assails as "perfunctory" and not in keeping with the ALJ's duty to offer a thorough analysis. (ECF No. 16 at 8.) *See Kastner v. Astrue,* 697 F.3d 642, 647 (7th Cir. 2012). Taken alone, the ALJ's statement would indeed be unacceptably perfunctory. *Ribaudo,* 458 F.3d at 583. However, the Seventh Circuit has indicated that, while not ideal, it is possible for an ALJ to show that she meaningfully considered a listing through a thorough discussion of the relevant evidence elsewhere in the opinion. *Adkins v. Astrue,* 226 Fed.Appx. 600, 605–06 (7th Cir. 2007). Here, the ALJ did thoroughly discuss the clinical and laboratory findings regarding Claimant's spinal disorders in a later section of her opinion. The ALJ noted that a July 2011 MRI showed mild to moderate cervical spondylosis throughout, most pronounced at C5–C6. (R. 43.) She also noted that Claimant denied any back pain or discomfort in a physical exam in her most recent exams in November, 2012. (R. 43.) While Claimant's medical records do show some additional reports of back pain in September 2011, prior to the period at issue in this case, follow-up notes indicate that the pain "improved quite a bit with physical therapy." (R. 830–31.) The ALJ also discussed Claimant's July 2012 episode of diffuse pain, but the evidence does not attribute that to a spinal disorder. (R. 64, 1202–1210, indicating possible but unconfirmed diagnoses of fibromyalgia or a neurological disorder.)

Meanwhile, Claimant has failed to sustain her burden of showing that her impairments met the elements of any subsection of Listing 1.04, and the Court has not found any evidence to suggest that they do. For example, there is no evidence that Claimant's spinal impairment caused a limitation in the range of motion of her spine or motor loss, which are among the elements necessary to meet Listing 1.04A; nor that she suffers spinal arachnoiditis, as would be necessary to meet Listing 1.04B; nor that she has an inability to ambulate effectively, which is an

8

essential element of Listing 1.04C. (*See e.g.* R. 941 (Claimant can walk one block or ascend more than ten steps without stopping); R. 1202 (Claimant has full ranges of motion.))

Claimant also posits that the ALJ should not have accepted as controlling the opinions of the state agency consultants, both of whom determined that Claimant's impairments did not meet any listing, without showing why the treating sources' opinions were disregarded. (ECF. No. 16 at 8.) This argument is inapplicable where, as here, there is no treating source's opinion in the record. Claimant in her Reply brief again emphasizes that reliance on reviewing experts is misplaced "when contradictory evidence exists in the file from treating physicians." (ECF No. 22 at 3.) But, again, counsel does not indicate where, in the 1,230-page record, such contradictory evidence may be found. The Court has found no treating physician's opinion, and counsel has not pointed to any statements from treatment notes that should be construed as opinions contradicting those of the reviewing physicians. Judges are not "archaeologists consigned to excavating masses of paper in search of possibly revealing information that might benefit the party whose briefs provided no clue of where to dig." *Hermann v. Astrue,* 2010 WL 356233 at *2 (N.D. Ill. Feb. 1, 2010) (citing *Northwestern Nat. Ins. Co. v. Baltes,* 15 F.3d 660, 662–63.) In the absence of contrary opinion evidence, the ALJ did not err in placing "great weight" on the opinions of the reviewing physicians.

Claimant also faults the ALJ for considering only whether her impairments "met" a listing, omitting any evaluation of whether those impairments "equaled" a listing. (ECF No.16 at 7.) Once again, counsel has not made an attempt to meet Claimant's burden of proof. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley,* 493

9

U.S. at 531. Here, Claimant has suggested that analyzing her impairments in combination "may" lead to a finding of equivalence "to one or more listings." (ECF. No. 16 at 7.) However, she does not name any such listing, set forth its elements, or present any medical evidence of equivalence.[2] Therefore, Claimant's equivalence argument is undeveloped and will be deemed waived. *Shumaker v. Colvin,* 652 Fed.Appx. 861, 867 (7th Cir. 2015) (citing *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments...are waived.")

### C. The ALJ's RFC Analysis Was Supported By Substantial Evidence

Claimant next claims that multiple errors in the ALJ's RFC assessment mandate remand. She argues that the record does not support the ALJ's finding that she has the RFC to perform a limited range of light work because: (1) the ALJ failed to conduct a functional assessment of Plaintiff's work-related capacities and did not produce a narrative discussion connecting the Plaintiff's RFC to the medical record; (2) the ALJ's assessment of the evidence about Claimant's diabetes is self-contradictory and ignored her testimony of periodic low blood sugar; (3) the ALJ wrongly found that she had no restrictions arising from her diagnosed myocardial bridge; and (4) the ALJ omitted any consideration of fibromyalgia and Claimant's symptoms of generalized body pain and weakness. (ECF No. 16 at 9–10.) In sum, Claimant argues that "the ALJ did not assess the medical evidence with a view to determining the actual physical and mental capacities that [Claimant] had available for full-time work." (*Id.* at 10.) These arguments are without merit.

---

[2] The Court notes that Claimant's then-attorney did name two other listings in a letter to the ALJ on October 8, 2012: Listings 3.02, Chronic Pulmonary Insufficiency; and Listing 14.06, Undifferentiated and Mixed Connective Tissue Disease. (R. 121.) However, that letter did not explain how Claimant's impairments met or equaled the elements of any subsection of either of those listings. Additionally, Claimant did not argue these listings before the Appeals Council and has not raised them before this Court. *See Shumaker v. Colvin,* 652 Fed.Appx. at 867 (arguments not presented before the District Court are waived).

Contrary to Claimant's assertions, in assessing her RFC the ALJ did provide a thorough narrative discussion of her medical history and limitations. (R. 39–45.) She also indicated that she gave "great weight" to the opinions of reviewing physicians George Andrews M.D. and C.A. Gotway M.D., who both reviewed Claimant's medical record and opined that she is capable of light work with certain restrictions. (R. 45; R. 1121–21; R. 1192–95.) The ALJ's assessment of Claimant's RFC adopted the restrictions assessed by Dr. Andrews and affirmed by Dr. Gotway, except that the ALJ, in consideration of Claimant's testimony, also assessed that Claimant would need to change positions frequently, sitting for only thirty minutes and standing for only one hour at a time. (R. 39.) Claimant's brief does not indicate what additional restrictions should have been included.

With respect to Claimant's diabetes, the ALJ provided a careful review of Claimant's file and noted that she had experienced "consistently low blood sugar," after which her doctors had adjusted her medications. (R. 42, citing R. 1232.) The ALJ also made note of Claimant's testimony that the medication adjustment had helped. (R. 42, citing R. 64–65.) Additionally, the ALJ noted that there was no evidence of any functional limitations ascribed to Claimant's diabetes. (R. 42.)

With respect to Claimant's myocardial bridge,[3] Dr. Andrews in a narrative portion of his report summarized the medical findings related to Claimant's descending artery and cardiac function. (R. 1128.) Dr. Andrews found Claimant capable of light work, and, in the absence of any countervailing physician's opinion, the ALJ was entitled to rely on that assessment of the medical findings. (R. 1122.) Claimant has pointed to no medical evidence indicating that she has any functional limitations owing to her myocardial bridge.

---

[3] Myocardial bridging occurs when myocardial (heart muscle) tissue forms across an artery. It is "usually asymptomatic" but can in some individuals cause the artery to become compressed. *Dorland's Medical Dictionary,* http://www.dorlands.com//def.jsp?id=100300434 (last visited August 11, 2016).

11

In considering the extent of Claimant's limitations due to pain, the ALJ described Claimant's hospitalization for diffuse body pain on July 29, 2012. (R. 45.) At that time, doctors suggested several possible diagnoses, including fibromyalgia, but indicated that more testing was needed to exclude other possible causes. (R. 1203, 1207–08, 1212.) She was prescribed Lyrica. (R. 1203, 1212.) On August 2, 2012, she reported that she was feeling "much better" and was discharged. (R. 1212.) In evaluating this history, the ALJ noted that Claimant's pain had improved, and that doctors ascribed this improvement to the new medication or to the control of her blood sugars. (R. 45, citing R. 1212.) The ALJ observed that, since that time, Claimant has not sought further treatment for pain. (R. 45.) While she acknowledged Claimant's testimony that her lack of follow-up was due to a lack of insurance, she also noted that, when Claimant next did visit a health clinic in November 2012, her chief concerns were diabetes, depression, and hypertension. (R. 45, citing R. 1231–1240.) Diffuse pain was not among the conditions addressed at that time. (*Id.*) The ALJ thus considered all of the relevant evidence and built the requisite logical bridge from that evidence to her conclusion that Claimant remained capable of performing a limited range of light work. (R. 39–45.)

C. **The ALJ Has Supported Her Assessments of Claimant's Subjective Symptom Statements**

Claimant's final argument is that the ALJ incorrectly discounted her credibility in discussing the severity of her symptoms, specifically citing her chest pain and shortness of breath. As an initial matter, the Court notes that the Social Security Administration earlier this year updated its guidance regarding subjective symptom evaluation. *See* Social Security Ruling 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new policy interpretation eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1.

Pursuant to regulation, the process followed and the factors considered by an ALJ in evaluating the intensity, persistence, and limiting effects of an individual's symptoms have not changed, and the Court remains bound by case law concerning that regulatory process. *Pietruszynski v. Colvin,* No. 14 C 2148, 2016 WL 1535158, at *6 (N.D. Ill. Apr. 14, 2016); *see generally Cole v. Colvin,* -- F.3d --, 2016 WL 3997246 (7th Cir. July 26, 2016.)

Claimant criticizes the ALJ's reference to her activities of daily living (ADLs) as evidence that her symptoms are not disabling. *See Moss v. Astrue,* 555 F.3d 556, 562 (7th Cir. 2009) (criticizing an ALJ for placing "undue weight" on household activities and disregarding claimant's limitations in performing those activities.) Here, the ALJ did not base her assessment of Claimant's symptom severity solely on her ADLs. Instead, the ALJ gave other specific reasons for discounting Claimant's reports of the severity and persistence of her symptoms. For example, in reviewing the medical evidence, the ALJ made note of several areas in which Claimant's allegations were inconsistent with statements made to her physicians or with clinical findings. (R. 41–45.)

The ALJ addressed Claimant's chest pain and shortness of breath in her observations that Claimant had never required ongoing treatment for asthma or used a rescue inhaler, that a pulmonologist in July 2012 determined that her sarcoidosis had been in remission for years, and that the record lacked any medical evidence to corroborate her assertions that her oxygen was low and that she needed to lie flat to breathe. (R. 41, 46.) Nevertheless, the RFC assessment accounted for Claimant's history of respiratory ailments by specifying that she should avoid concentrated exposure to extreme cold, heat, wetness, humidity, and pulmonary irritants. (R. 39, 41.) The ALJ has provided specific reasons, grounded in the record, to support her determination regarding Claimant's subjective symptom statements, and did not neglect to

13

consider any significant line of contrary evidence. *See Curvin v. Colvin,* 778 F.3d 645, 651 (7th Cir. 2015) ("So long as an ALJ gives specific reasons supported by the record, we will not overturn [her] credibility determination unless it is patently wrong.") Therefore, her evaluation of Claimant's subjective symptom statements stands.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted. The decision of the Commissioner is affirmed.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 22, 2016